## THE PEOPLE v. VALCOURT.

APPEAL from the District Court of San Juan, Section 2.

No. 419.—Decided June 11, 1912.

CRIMINAL LAW—CONTEMPT—PERJURY—RULE TO SHOW CAUSE.—Under the Act of March 9, 1911, providing a summary punishment for perjury as contempt, the trial judge is not required to examine all or any of the evidence before issuing the rule against the perjuror to show cause why he should not be punished for contempt or to incorporate in said order a statement of such evidence, it being sufficient that the judge shall be satisfied that the perjury has been committed in order that he may proceed on his own motion alone with the inquiry for contempt.

ID.—CONSTITUTIONAL LAW—CONTEMPT—PERJURY—SUMMARY PUNISHMENT FOR PERJURY.—In The People v. Fourquot, 17 P. R. R., 1037, it was held that the Act of March 9, 1911, summarily punishing perjury as contempt is not unconstitutional.

ID.—PERJURY AS DOUBLE OFFENSE—CONTEMPT—FORMER JEOPARDY.—It is premature to enter the plea of former jeopardy when, as in the case at bar, the appellant, who was charged with contempt for having committed perjury, has not been prosecuted for perjury in accordance with the ordinary proceedings provided by the Code of Criminal Procedure. There are many crimes which at the same time are contempts of court, and the fact that punishment has been imposed for the contempt does not prohibit punishment for the crime by which the contempt was committed.

ID.—PERJURY—CONTEMPT—MEANING OF "CASE PENDING"—JURISDICTION.—Examining the Act of March 9, 1911, punishing as contempt the crime of perjury, it appears that the words "during the trial of any case pending" limit the institution of proceedings for perjury as contempt to the time during the trial of a case pending. It is said that a civil case is "pending" before a court from the time the complaint is filed until the judgment is rendered disposing of the matter litigated. When the case ceases to be "pending" the jurisdiction to punish for contempt by means of perjury ceases, and the delinquent is liable to prosecution for the perjury in the usual manner only.

ID.—PERJURY—EVIDENCE—CONTEMPT—MANIFEST FALSITY OF TESTIMONY.—The words "manifest falsity of the testimony" mean that the judge presiding at the trial of a case should be satisfied that the perjury has been committed, and this fact becomes manifest to the judge like any other fact by observation, by perception, by reasoning, and other means not detailed in the statute.

The facts are stated in the opinion.

*Mr. Cayetano Coll y Cuchí* for appellant.

*Mr. Charles E. Foote, fiscal,* for respondent.

MR. JUSTICE MACLEARY delivered the opinion of the court.

On August 14 last the appellant in this case was adjudged, by the Second Section of the District Court of San Juan, to be in contempt of court by reason of a perjury committed by him on the 18th of the previous month of July in a divorce case then pending in said court, in which said Valcourt was plaintiff and a witness on his own behalf, and was condemned to the punishment of three months' imprisonment in jail and to pay the costs of prosecution.

The trial court, holding the testimony of the plaintiff to be false, on August 3, 1911, issued a rule to show cause against the appellant herein, requiring him to state reasons, if any he might have, why he should not be punished for contempt. A trial was had, several witnesses were examined and defendant was found guilty and was condemned to imprisonment as stated. An appeal was duly taken, and the record shows a bill of exceptions and a statement of the case embodying the evidence adduced on the trial. Written briefs for the parties, appellant and respondent, were filed, after some delays, and oral arguments were made on the hearing.

A preliminary question is raised herein to the effect that, as it appears from the record, there is no judgment condemning the appellant to any punishment whatever, and that for such reason the accused should be acquitted by this court. The judgment of conviction appears to be regular except that it lacks the signature of the trial judge. The appellant relies on Chapter I of Title VIII of the Code of Criminal Procedure to sustain this proposition.

There is nothing therein, nor in any other statute of this Island, which requires the judgment to be signed by the judge trying the case. It is the common practice in our courts, and we think it is commendable and worthy to be continued, but it is not required by law. On the contrary, when a judgment of conviction is rendered, the clerk is required to enter the same on the minutes of the court, stating briefly the offense of which the defendant was convicted, and must, within five days thereafter, include a copy of the same in the record

which is to be made up of the action. Sec. 326 of the Code of Criminal Procedure. So we hold the judgment of conviction to be in proper form as it stands.

This is the second case of this kind that has come to this court for decision. The first was the case of José Fourquet, which was affirmed on November 20, 1911. But there are marked differences in the two cases, which will be adverted to later on. Let us examine the record now before us and the points presented therein. Two grounds are alleged on which a reversal of the judgment rendered in the court below is sought.

1. That the trial court did not acquire jurisdiction, because the rule to show cause failed to set forth facts sufficient to constitute the crime of perjury.

2. That the law of March 9, 1911, providing a summary punishment for contempt committed by means of perjury, is unconstitutional.

In regard to the defects in the rule to show cause, we may first make a short discussion. The order clearly charges that the accused committed perjury in open court while testifying in a civil case. This is all that was necessary. It is clear that under the statute providing the summary method of punishing such contempts the trial court, while the case was pending in which the perjury was committed, had jurisdiction of the contempt. It must not be lost to sight that the punishment in this case was imposed for the contempt and not for the perjury, which, as the statute provides, the defendant might still be called on to answer for in another prosecution.

The rule to show cause contained more than the law required, but this did not vitiate it. All that the law requires in such proceedings is that the judge shall be satisfied, in his own mind, from all the circumstances and the evidence made manifest before him in the first instance, that the perjury has been committed. He can then proceed, on his own motion alone, with the inquiry for contempt, and he is not required to examine all nor any of the evidence before issuing the rule

to show cause, nor to incorporate in this order a statement
of such evidence. The proof is taken on the trial, and on it
is founded the final decision and judgment of the court as to
whether or not a contempt has been committed and the punish-
ment therefor, if any. This case in this particular is quite
similar to that of Fourquet decided by this court on the 20th
of last November.

But in the Fourquet case the constitutionality of the stat-
ute on which this proceeding is based was doubted, because it
was suggested that the contemnor did not have due process
of law in his conviction. On this point the statute was held
to be constitutional. Now, another provision of the Amer-
ican Constitution is invoked by the appellant. It is the pro-
vision contained in the same Fifth Amendment that no per-
son shall be subject, for the same offense, to be twice put in
jeopardy of life or limb.

As to this view of the unconstitutionality of the law on
which the proceeding was based, we may say that it is pre-
mature now to raise the issue of being twice in jeopardy for
the same offense, which can be presented when the appellant
is prosecuted, if ever, for the perjury which he is charged to
have committed on the trial of the divorce case. Then the
question can be decided. The defendant has not yet been
twice put in jeopardy, and until that occurs he cannot claim
the protection of the Fifth Amendment to the Constitution
of the United States. Besides, there are many crimes and
offenses which are at the same time contempts of court, and
punishment imposed for the contempt in such cases does not
inhibit the assessment of a penalty for the crime by means
of which the contempt was committed. An assault committed
by any person in an open court during the progress of a trial
is an infraction of the law against a breach of the peace and
at the same time constitutes a contempt, which may be sum-
marily punished by the court even without any formal trial.
There are many other examples to the same effect which
might be cited. It may be remarked, however, that in impos-

ing the penalty on the conviction for perjury, should it occur, the imprisonment imposed for contempt, if suffered by the appellant, may be considered in mitigation of the sentence for perjury.

We have heretofore held the Act of March 9, 1911, to be con_ stitutional, and there is no need to repeat here the discussion had in the opinion of this court in the Fourquet case on November 20, 1911. That opinion has not yet been published in the Porto Rico Reports, but it will appear in volume 17. *People* v. *Fourquet*, 17 P. R. R., 1037. An imperfect extract therefrom appears in volume 3 of the Official Gazette, on pages 512 and 513, No. 6, dated Jauary 1, 1912, where we say that "we think there is no doubt of the power of the Legislature to pass such an act as that on which this proceeding was based, and that it is in full force and vigor in all its parts." Such is still our opinion, notwithstanding this new assault upon the statute from a different angle from that formerly used as a base of attack. The law criticised is strictly in harmony with the American Constitution.

But there are other matters to be taken into consideration in the decision of this case, some of which have caused the reargument of the same and the filing of additional briefs by the counsel for The People and the accused. The first is, as to the meaning of the words, "during the trial of any case pending" in the courts, used in the first section of the statute punishing such contempts. Remembering that we have in our Penal Code a valid and subsisting law denouncing and punishing perjury in the regular way, by means of an information and a trial before a jury or the court, like any other felony, may assist us in this matter. Contempts committed in presence of the court, like the present act charged against the appellant, are usually punished summarily and while the current business of the court is pending. The perjury can be inquired into and, if necessary, punished at any time within the time prescribed by the statute of limitations. But the

contempt committed by the perjurer, in attempting to deceive the court by false testimony, requires more summary proceedings. For this reason perhaps the proceeding for contempt is limited to the time "during the trial of a case pending." A civil case is pending before the court from the time the complaint is filed until the judgment is rendered disposing of the matter litigated. When the case ceases to be pending, the jurisdiction to punish for contempt committed by means of perjury ceases, and the delinquent is liable only to prosecution for the perjury in the usual manner.

The second question argued on the new hearing was how the requirement of the statute that the falsity of the testimony should be manifest to the trial judge should be interpreted. We have said in the Fourquet case that it is necessary that "the judge presiding in a case should be *satisfied* that a witness, in the case then pending in his court, after having taken the required oath, was guilty of perjury," in order to take proceedings to declare him in contempt and punish him accordingly. The fact that the witness is giving false testimony becomes *manifest* to the judge like any other fact, by observation, by perception, by reasoning, and other means which are not detailed in the statute. The judge must be satisfied, the fact must be *manifest,* "just as a *prima facie* hearing in a civil proceeding may impel a court to issue an alternative writ of *mandamus,* or to issue a preliminary injunction." (Fourquet case, *supra.*) The word "manifest," as used in this statute, means this and nothing more.

The third matter argued on the second hearing has already been disposed of in treating of the first and requires no further discussion. Then, having found, as it is admitted by the *fiscal,* that the proceedings for contempt were begun and concluded after the termination of the divorce case, in which the perjury occurred, the trial court had lost its jurisdiction to take action under the statute of March 9, 1911, and the judgment rendered therein was improper and really void. For the reasons herein stated, the judgment convicting the

appellant of the contempt and condemning him to imprisonment must be annulled and the defendant discharged.

*Reversed.*

Chief Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.